☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)* )<br>11525 West Church Street, Franklin, )<br>Wisconsin 53132 )<br> ) | Case No. 22-975M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A1

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____ September 7, 2022 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Nancy Joseph _____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 08/24/2022 12:16 pm _____

*Judge's signature*

City and state: Milwaukee, Wisconsin _____ Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.:<br>  22-975M(NJ) | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A1

### Property to Be Searched

The property to be searched is located at 11525 West Church Street, Franklin, Wisconsin, 53132, (PREMISES). It is further described as a white two-story single-family home, with a two-car detached garage, located on the south side of the road, west of South 116th Street. The numbers "11525" are affixed to the siding to the right of the front door. There is a detached garage that is white in color and located to the south of the main residence. The garage has a garage door that is two vehicles wide, and an access door next to the garage door. The siding on the garage is the same siding that is on the main residence. There is also a white single story shed at the back of the property, to the south of the main residence. The shed has double doors that open towards the residence. For purposes of this warrant, the PREMISES includes the residence, the garages, and or outside shed on the property.



**ATTACHMENT B**

**ITEMS TO BE SEARCHED FOR AND SEIZED**

This warrant authorizes the search and seizure of the items listed below from the residence identified in Attachments A, in order to locate property, evidence, fruits, and instrumentalities of violations of Title 18 United States Code Sections 1038(a) (Hoax Bomb Threat), 2332(a)(3) (Threat to Use a Weapon of Mass Destruction Against a Building Owned by the Government of the United States), and 844 (Threat of Destruction of a Building through Use of Explosives), to include:

a. Evidence of the crime described above;

b. Preparatory steps taken in furtherance of that crime;

c. Evidence of the existence, scope, or overt acts in furtherance of a conspiracy;

d. Evidence of motive, intent, or knowledge of the crime described above;

e. Information about the bomb threats at the FBI headquarters located in the Eastern District of Wisconsin on August 20, 2022;

f. Brand: Google, Model: Mediatek MT8173 Chromebook, Android ID: 451094284317635676, Serial Number(s): hana_cheets:D580ED0BA35E8AFF94E1;

g. Evidence of the location, whereabouts, and travel of Jennifer M. Kennedy, Derrick M. Rischman Olivia A. Rischman, Claire C. Rischman, and Jack A. Rischman on August 20, 2022;

h. Evidence indicating how and when electronic devices were accessed or used, to determine the chronological and geographic context of access, use, and events relating to the crime under investigation;

i. All computers or storage media located.

j. Records of or information about the computer's internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

k. Routers, modems, and network equipment used to connect computers to the Internet;

l. Records, information, and items relating to the occupancy or ownership of the PREMISES and SUBJECT VEHICLES (collectively A2 and A3), including utility and telephone bills, mail envelopes, or addressed correspondence;

m. Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for internet access, and handwritten notes.

n. Records, information, and items relating to the email addresses: volumeztextnow@gmail.com and roselean25.6@gmail.com.

o. Explosive material, containers, precursors, instructions, initiators, or any tools and items used in manufacturing explosives.

19

**p.** Contextual information necessary to understand the evidence described in this attachment; and

**q.** Evidence of state of mind as it relates to the crimes under investigation.

**r.** Evidence of voice changer device or application.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware. It also includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. |
| 11525 West Church Street, Franklin, Wisconsin 53132 | ) ) ) | 22-975M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1038(a); 18 U.S.C. 2332a(3); 18 U.S.C. 844 | Hoax Bomb Threat; Threat to Use a Weapon of Mass Destruction Against a Building Owned by the Government of the United States; Threat of Destruction of a Building Through Use of Explosives |

The application is based on these facts:

See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ian Byrne, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 8/24/2022

_____
*Judge's signature*

City and state:  Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Ian Byrne, being first duly sworn on oath, on information and belief state:

## I.      INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for warrants to search the following premises and vehicles, further described in Attachments A1, A2, and A3 (collectively, "Attachments A"), for the things described in Attachment B:

> **A1.    11525 West Church Street, Franklin, Wisconsin 53132 (PREMISES);**
>
> **A2.    2003 Buick LaSabre, white, WI license plate: AHE1621, VIN: 1G4HP52K93U170117; and**
>
> **A3.    2006 Mercedes CLK500, silver, WI plate: AGW1108.**

Attachments A2 and A3 collectively, "SUBJECT VEHICLES."

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since December 2021. Prior to my employment with the FBI, I was an active-duty U.S. Army soldier for approximately nine years. I am currently assigned to the FBI's Milwaukee Area Violent Crimes Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including violent and threatening criminal matters defined under Title 18 of the United States Code. I have been trained in a variety of investigative matters, to include threatening communication. I have also been trained in a variety of legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have assisted in criminal investigations, participating in surveillance, searches, interviews, and debriefs of arrested subjects. As a result of this training and investigative

experience, I have learned how and why criminal actors typically conduct various aspects of their criminal activities.

3. This affidavit is based upon my personal knowledge, training, and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom affiant believes to be truthful and reliable. This affidavit is also based upon police reports, official records, citizen witnesses' statements, law enforcement surveillance, surveillance video, and public records which affiant considers to be reliable as set forth herein.

4. Because this affidavit is submitted for the limited purpose of obtaining a search warrant, affiant has not included each and every fact known to me concerning this investigation. Affiant has attempted to set forth only the facts that affiant believes are pertinent to establishing the necessary foundation for the search warrant.

5. Based on the investigation to date, affiant believes there is probable cause to believe that property, evidence, fruits, and instrumentalities related to a hoax telephonic bomb threat made to the Milwaukee Division of the FBI, in violation of Title 18 United State Code Sections 1038(a) (Hoax Bomb Threat), 2332(a)(3) (Threat to Use a Weapon of Mass Destruction Against a Building Owned by the Government of the United States), and 844 (Threat of Destruction of a Building through Use of Explosives), will be located on the PREMISES and the SUBJECT VEHICLES, further described in "Attachment A." The items to be searched for are listed in "Attachment B."

## II.    PROBABLE CAUSE

6. On August 20, 2022, at approximately 3:00pm Central Standard Time (CST), while on official duty, FBI Operational Support Technician (OST) L.W. received a telephone call from an unknown subject. The caller had a British / Middle Eastern type combination accent; however OST L.W., nor case agents could not determine if the accent was either legitimate, a natural

2

impression, or a digital voice changer. The caller stated that he placed a C4 bomb around the building that would automatically detonate in 25 minutes. The caller instructed L.W. to evacuate the building and asked if there were other people in the building. OST L.W. responded that she was the only person in the building.

7. The nature of the telephone call prompted OST L.W. to ask the caller questions in order to ascertain more information about the threat.  The caller said that he placed the bomb himself and did it because he wanted to. The caller refused to describe the bomb. The caller refused to identify himself but did say his nickname is "Volumes."

8. OST L.W. told the caller that she was going to disconnect the call. The caller asked if she was going to be able to "pull this off in now 14 minutes." OST L.W. responded that she would. OST L.W. disconnected the phone call at approximately 3:05pm CST, in order to begin FBI emergency procedures to include notifying FBI Bomb Technicians and emergency response. Milwaukee Police Department Explosive Detection Canine Division, FBI Special Agents, and an FBI Special Agent Bomb Technician (SABT) responded.

9. Affiant was assigned to investigate the matter.  The Milwaukee Police Department Explosive Detection Canine team and FBI SABT called the scene clear at approximately 5:00pm CST.  No explosive materials were located by law enforcement.

10.    Upon investigating into the bomb threat, it was determined that based on caller-ID, the phone number used to make the bomb threat was (414) 667-3817 (TARGET NUMBER). FBI Databases determined that the number was registered under the provider Bandwidth.com. After serving an Emergency Disclosure Request, the Bandwidth.com Law Enforcement Response Team revealed the number was sold to the provider TextNow. TextNow Inc. was served with an Emergency Disclosure Request and revealed that the TARGET NUMBER was a Voice over Internet Protocol (VoIP) number assigned to an account with username: roselean25.6, email:

3

roselean25.6@gmail.com, and Internet Protocol (IP) address: 70.92.12.247. The account also had TARGET NUMBER ownership through 10:59pm CST on August 20, 2022. Furthermore, timestamps associated with the use of the TARGET NUMBER revealed the phone number used the IP address: 80.4.102.166 during the time period between 2:57pm – 3:06pm CST. The bomb threat call was received on August 20, 2022 at approximately 3:00pm CST. The TARGET NUMBER was also still linked to IP address: 70.92.12.247 after the bomb threat call until at least 10:59pm CST on August 20, 2022.

11.     IP address: 70.92.12.247 was owned by the internet service provider Charter Communications on August 20, 2022. After submitting an emergency disclosure to Charter Communications, they provided the subscriber information associated with IP address: 70.92.12.247. The account holder was identified as Jennifer Kennedy, address: 11525 W. Church Street, Franklin, WI 53132 (PREMISES), phone number: (414) 257-0448.

12.     After an Emergency Disclosure Request, Google revealed subscriber information associated with roselean25.6@gmail.com, and that the account was created on August 20, 2022 at 11:37am CST.  TextNow records indicate that the TARGET NUMBER utilized 70.92.12.247 up until 11:50am CST on August 20, 2022. Less than two minutes later, the TARGET NUMBER switched to IP address: 80.4.102.166.   On August 20, 2022 at 2:57pm CST, the TARGET NUMBER utilized the IP address: 80.4.102.166 and was continued to be used at least through 3:06pm CST. This is the approximate time of the bomb threat call around approximately 3:00pm CST, as well as the same IP address used by the TARGET NUMBER at the time of the bomb threat.  TextNow reported that the TARGET NUMBER also utilized IP address: 70.92.12.247 from August 20, 2022 11:49am to August 20, 2022 10:59pm CST.

13.     Based on my knowledge and experience, and the knowledge and experience of other law enforcement investigators, VoIP in conjunction with Virtual Private Networks (VPN)

are often utilized as a proxy to mask IP addresses to hide the true location of individuals seeking to obscure their online activity. Affiant believes that the TARGET NUMBER switched to IP address 80.4.102.166, to disguise future criminal activity. Affiant believes 80.4.102.166 IP address belongs to a VoIP provider which returns to Virgin Media Limited, in Rotherham, United Kingdom, based on IP address search database results. Although the IP address of 70.92.12.247, that is connected to the PREMISES, was used during this offense, the IP address of 80.4.102.166 was also utilized. I know based on my training and experience that the individuals engaged in criminal activity will attempt to evade law enforcement by using technology which allows IP addresses to appear on devices linked to locations of different city, different states, even different countries.

14. Google also provided device information associated with roselean25.6@gmail.com, which was identified as, Brand: Google, Model: Mediatek MT8173 Chromebook, Android ID: 4510942843176356576, Serial Number(s): hana_cheets:D580ED0BA35E8AFF94E1. Furthermore, Google provided the users of this device: rischmanjack1@gmail.com, jackrischman6@gmail.com, jack.rischman@franklinsabers.org, trxdemaster@gmail.com, unpocsoviet@gmail.com, omenpoc@gmail.com, mightyworship666@gmail.com, kalianworship666@gmail.com, volumeztextnow@gmail.com, and roselean25.6@gmail.com. It should be noted that the nickname the caller gave to OST L.W. during the bomb threat phone call was "Volumes," which is seen in the associated user account: volumeztextnow@gmail.com.

15. Records and database checks have Jennifer M. Kennedy (Date of Birth (DOB) XX/XX/1978), Derrick M. Rischman (DOB XX/XX/1999), Olivia A. Rischman (DOB XX/XX/2000), Claire C. Rischman (DOB XX/XX/2003), and Jack A. Rischman (DOB XX/XX/2008) as residing at the PREMISES. It should be noted that Jack A. Rischman, matches

5

the name in the email addresses: rischmanjack1@gmail.com, jackrischman6@gmail.com, and jack.rischman@franklinsabers.org, which are linked to the device associated with the email account: roselean25.6@gmail.com used with the TARGET NUMBER.

16.     In summary, based on the information provided by Bandwidth.com, TextNow, Google, Inc., Charter Communications, and Accurint, Affiant knows the TARGET NUMBER was assigned to roselean25.6@gmail.com from August 20, 2022 11:49am to August 20, 2022 10:59pm utilizing IP address 70.92.12.247. The bomb threat made to the FBI Milwaukee field office was made at approximately 3:00pm on August 20, 2022. On August 20, 2022, IP address 70.92.12.247 was reported to be utilized at the PREMISES. Furthermore, the TARGET NUMBER used the IP address 80.4.102.166 when calling the FBI Milwaukee field office to make the bomb threat. IP address 80.4.102.166 was also used by roselean25.6@gmail.com on August 20, 2022 at 2:57pm. Google also reported the Chromebook associated with roselean25.6@gmail.com on August 20, 2022 contained other user data to include four email accounts: rischmanjack1@gmail.com, jackrischman6@gmail.com, jack.rischman@franklinsabers.org, and volumeztextnow@gmail.com. Three email accounts contained the name of Jack Rischman. Jack A. Rischman has been identified to reside at the PREMISES. The volumeztextnow@gmail.com email account matched the name "Volumes" the subject used to identify himself to OST L.W.

17.     Between August 21, 2022 and 22, 2022, affiant conduct surveillance of the PREMISES.  Affiant is aware that the PREMISES consistent of a white two-story single-family home, with a two-car detached garage, located on the south side of the road.  There is also a white single story shed at the back of the PREMISES, to the south of the main residence. Affiant also observed the following vehicles at the PREMISES:

a.  2003 Buick LaSabre, white, WI license plate: AHE1621, VIN: 1G4HP52K93U170117 (A2);

6

b.  Chevrolet Silverado, tan, unknown license plate and VIN;

c.  2006 Mercedes CLK500, silver, WI plate: AGW1108(A3); and

d.  Hyundai Santa Fe, black, unknown license plate and VIN.

(A2 and A3 collectively "SUBJECT VEHICLES").

18.  Further, on August 21, 2022 affiant conducted a law enforcement database record search which confirmed 2006 Mercedes CLK500, silver, WI plate: AGW1108 is registered to Jennifer M. Kennedy and associated with the PREMISES.

19.  Further, on August 22, 2022 affiant conducted a law enforcement database record search which confirmed 2003 Buick LaSabre, white, WI license plate: AHE1621, VIN: 1G4HP52K93U170117 is registered to Olivia A. Rischman and associated with the PREMISES.

20.  Law enforcement were not able to determine any further information regarding the Chevrolet Silverado, tan, unknown license plate and VIN is registered or the Hyundai Santa Fe, black, unknown license plate and VIN which were also located on the PREMISES.

## III.  TECHNICAL TERMS

21.  Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  **VOICE OVER INTERNET PROTOCOL (VoIP)**

22.  Voice over Internet Protocol (VoIP) is a technology that allows users to make and receive phone calls over the internet.  VoIP makes it possible to have phone conversations, as well as send and receive texts through using a broadband connection instead of cellular networks or phone lines. Through signing up and utilizing a VoIP provider, anyone with an internet-connected device can have a fully working phone.

7

23.     Though VoIP is an internet-based technology, call recipients can be cellular or landline. A VoIP provider can route data from the device's IP address to any public or private phone network.

24.     The service provider will use a communications protocol, also known as a signaling protocol, to connect the call. Session Initiation Protocol (SIP), is the most common. SIP allows VoIP providers to set up and terminate VoIP calls and transmit messages from one device to another.

25.     To utilize VoIP, the user dials a number with the smartphone, desktop computer, laptop, tablet, or IP desk phone.  The VoIP provider establishes the connection using SIP or a similar protocol. Audio signals are digitized and compressed into data packets from one user to the other.  When the data packets reach the recipient, they are reassembled into analog audio signals by the receiving device.  The entire process is instantaneous. So long as there is a good internet connection, there should not be any audio delays.

### b.  INTERNET PROTOCOL (IP) ADDRESS

26.     Internet Protocol address, or (IP) address, refers to a unique number used by a computer to access the internet.  IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the internet.

27.     ISPs, as used herein, are commercial organizations that are in business to provide individuals and businesses access to the internet.  ISPs provide a range of functions for their customers including access to the internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.  ISPs can offer a range of options in providing access to the internet including telephone-based dial-up, broadband based access via digital

8

subscriber line (DSL), or cable television, dedicated circuits, or satellite-based subscription. Electronic devices, like a computers and Chromebook, can connect to the internet with the IP address at a premise, but can be located in different buildings or vehicles on the premises. For example, the electronic device might be connected to the internet of the IP address associated with a residence, but it can be located in a garage on the premises, storage area outside of the residence, or a vehicle on the premises. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name—a username or screen name, an "email address," an email mailbox, and a personal password selected by the subscriber. By using a computer equipped with a modem, the subscriber can establish communication with an ISP over a telephone line, through a cable system or via satellite, and can access the internet by using their account name and password.

### d. VIRTUAL PRIVATE NETWORK (VPN)

28.     A virtual private network, or VPN, is an encrypted connection over the Internet from a device to a network. The encrypted connection helps ensure that data is safely transmitted where the originating IP address is disguised. VPN technology is easily available on the Internet and many companies provide it for free. VPN servers act as proxies on the internet. Because the demographic location data is usually transmitted from a server in another country, the originator's actual location cannot be determined. In addition, most VPN services do not store logs of activities. Some providers, on the other hand, record online behavior, but do not pass this information on to third parties. This means that any potential record of your user behavior remains permanently hidden.

### e. TEXTNOW

29.     TextNow is a VoIP application that provides users with access to phone numbers and the ability to make calls and send texts over the internet. Users of TextNow are assigned a

unique username and 10-digit phone number, which can be used to communicate through voice calls, text messages, picture messages, and voicemail. The application can be downloaded to, and used from a computer, smartphone, tablet, or other electronic device. TextNow has free and premium subscription accounts.

### f. COMPUTERS AND TABLETS

30.     "Computer" refers to an electronic, magnetic, optical, electrochemical, or other high speed data processing device preforming logical or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

31.     "Tablet" is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks. A Chromebook is a brand of a tablet.

32.     "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any

10

devices, mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to, physical keys and locks).

33.     "Computer Software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works.  It commonly includes programs to run operating systems, applications, and utilities.

## IV.     ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34.     As described above and in Attachment B, this application seeks permission to in order to locate property, evidence, fruits, and instrumentalities of violations of Title 18 United States Code Sections 1038(a) (Hoax Bomb Threat2332(a)(3) (Threat to Use a Weapon of Mass Destruction Against a Building Owned by the Government of the United States), and 844 (Threat of Destruction of a Building through Use of Explosives), that might be found on the PREMISES and the SUBJECT VEHICLES.  One form in which the records might be found is data stored on a computer's hard drive or other storage media (such as a cellular phone or tablet).  Thus, the warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B). Some of this electronic information, as explained below, might take a form that becomes meaningful only upon forensic analysis.

35.     Based on my knowledge, training, and experience, affiant knows that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

36.     *Probable cause.*  I submit that if a computer or storage medium is found on the PREMISES and the SUBJECT VEHICLES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

37. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how a device was used, the purpose of its use, who used it, and when. Although some of the records falling within the scope of items sought to be seized under requested warrant might consist of user-generated documents (such as word processor, picture, and movie files), many of those records might consist of electronic images, documents, records, or data on storage device storage media. There is probable cause to believe that this forensic electronic evidence might be on such a device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual

12

memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

13

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent. I also know from training and experience that it is possible that malicious software can be installed on a computer, often without the computer user's knowledge, that can allow the computer to be used by others, sometimes without the knowledge of the computer owner.

38.  *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the PREMISES or SUBJECT VEHICLES, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. To effect such accuracy and completeness, it may also be necessary to analyze not only the electronic storage devices, but also peripheral devices which may be interdependent, the software to operate them, and related instruction manuals containing directions concerning operation of the device computer and software. This is true because of the following:

14

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on PREMISES and SUBJECT VEHICLES could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the PREMISES and the SUBJECT VEHICLES. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

V. **CONCLUSION**

39. Based on the above factual information, affiant respectfully submit that there is probable cause to believe that property, evidence, fruits, and instrumentalities related to a hoax telephonic bomb threat made to the Milwaukee Division of the FBI, in violation of Title 18 United States Code Sections 1038(a) (Hoax Bomb Threat), 2332(a)(3) (Threat to Use a Weapon of Mass Destruction Against a Building Owned by the Government of the United States), and 844 (Threat of Destruction of a Building through Use of Explosives), will be located at 11525 West Church Street, Franklin, Wisconsin, 53132 and the vehicles at this location, further described in "Attachment A."

40. For all of the foregoing reasons, I request authorization to search 11525 West Church Street, Franklin, Wisconsin, 53132 and the vehicles more fully described in Attachments A for the things described in Attachment B.

15

## ATTACHMENT A1

### Property to Be Searched

The property to be searched is located at 11525 West Church Street, Franklin, Wisconsin, 53132, (PREMISES). It is further described as a white two-story single-family home, with a two-car detached garage, located on the south side of the road, west of South 116th Street. The numbers "11525" are affixed to the siding to the right of the front door. There is a detached garage that is white in color and located to the south of the main residence. The garage has a garage door that is two vehicles wide, and an access door next to the garage door. The siding on the garage is the same siding that is on the main residence. There is also a white single story shed at the back of the property, to the south of the main residence. The shed has double doors that open towards the residence. For purposes of this warrant, the PREMISES includes the residence, the garages, and or outside shed on the property.



## ATTACHMENT A2

### Property to Be Searched

The property to be searched is a 2003 Buick LaSabre, white, WI license plate: AHE1621,

VIN: 1G4HP52K93U170117 located on PREMISES.

17

## ATTACHMENT A3

### Property to Be Searched

The property to be searched is a 2006 Mercedes CLK500, silver, WI plate: AGW1108 located on PREMISES.

## ATTACHMENT B

### ITEMS TO BE SEARCHED FOR AND SEIZED

This warrant authorizes the search and seizure of the items listed below from the residence identified in Attachments A, in order to locate property, evidence, fruits, and instrumentalities of violations of Title 18 United States Code Sections 1038(a) (Hoax Bomb Threat), 2332(a)(3) (Threat to Use a Weapon of Mass Destruction Against a Building Owned by the Government of the United States), and 844 (Threat of Destruction of a Building through Use of Explosives), to include:

a. Evidence of the crime described above;
b. Preparatory steps taken in furtherance of that crime;
c. Evidence of the existence, scope, or overt acts in furtherance of a conspiracy;
d. Evidence of motive, intent, or knowledge of the crime described above;
e. Information about the bomb threats at the FBI headquarters located in the Eastern District of Wisconsin on August 20, 2022;
f. Brand: Google, Model: Mediatek MT8173 Chromebook, Android ID: 451094284317636576, Serial Number(s): hana_cheets:D580ED0BA35E8AFF94E1;
g. Evidence of the location, whereabouts, and travel of Jennifer M. Kennedy, Derrick M. Rischman Olivia A. Rischman, Claire C. Rischman, and Jack A. Rischman on August 20, 2022;
h. Evidence indicating how and when electronic devices were accessed or used, to determine the chronological and geographic context of access, use, and events relating to the crime under investigation;
i. All computers or storage media located.
j. Records of or information about the computer's internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;
k. Routers, modems, and network equipment used to connect computers to the Internet;
l. Records, information, and items relating to the occupancy or ownership of the PREMISES and SUBJECT VEHICLES (collectively A2 and A3), including utility and telephone bills, mail envelopes, or addressed correspondence;
m. Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for internet access, and handwritten notes.
n. Records, information, and items relating to the email addresses: volumeztextnow@gmail.com and roselean25.6@gmail.com.
o. Explosive material, containers, precursors, instructions, initiators, or any tools and items used in manufacturing explosives.

19

    **p.** Contextual information necessary to understand the evidence described in this attachment; and

    **q.** Evidence of state of mind as it relates to the crimes under investigation.

    **r.** Evidence of voice changer device or application.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware. It also includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

20